# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

OLIVIA K. MIKAROVSKI,

    Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

No. 18-CV-90-LTS-KEM

**REPORT AND RECOMMENDATION**

_____

Plaintiff Olivia K. Mikarovski seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Mikarovski argues that an apparent conflict exists between her ability to only occasionally perform "overhead work," and the vocational expert (VE) testimony that she could perform jobs that require frequent reaching according to the Dictionary of Occupational Titles (DOT). Mikarovski also argues that the ALJ improperly discredited her subjective complaints without considering statements from her employers. Finally, Mikarovski raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **reversing** the Commissioner's decision and **remanding** for further proceedings.

## I.    BACKGROUND[1]

Mikarovski began working at a hospital in 2002 as a surgical technician. AR 379.[2] In this position, she assisted doctors during surgeries by lifting surgical trays and

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 17).

[2] "AR" refers to the administrative record below, filed at Docs. 16-2 to 16-11.

positioning patients during the surgery. AR 193. In March 2013, she injured her back while lifting a surgical tray at work. *See* AR 365. Despite suffering back pain, she continued to work, but her job performance suffered, and she had to work part of her time in a light duty position where she greeted people at the hospital or assisted the Human Resources department with paperwork. *See* AR 379, 382, 393, 446, 507, 512, 518, 526. She re-injured her back in October 2014 in the same manner, exacerbating her pain. AR 526.

Mikarovski filed for DI benefits at the suggestion of a vocational rehabilitation expert. AR 14, 379, 493. Shortly thereafter, in February 2015, a functional assessment ordered in connection with Mikarovski's worker's compensation claim confirmed that she could no longer perform medium or heavy work as required to be a surgical technician. *See* AR 368-72, 387, 520, 522. Mikarovski underwent another assessment of her functional abilities with John Kuhnlein, DO, in February 2015, but he did not complete his report until April 2015. AR 379-85. The hospital gave Mikarovski until the end of March to apply for and obtain a different position within the hospital. AR 520. Her job applications went unanswered, and the hospital terminated Mikarovski's employment on March 27, 2015. AR 503, 505. Her last three months of employment at the hospital, Mikarovski worked only light duty. *See* AR 300.

Mikarovski continued to receive worker's compensation benefits through October 2015. AR 501. She looked into the possibility of becoming a licensed in-home daycare provider, and in October 2015, she reported being paid to watch her grandson (she testified babysitting her grandson lasted for only a week). AR 54, 195, 573. In November 2015, Mikarovski reported that she had started working at JC Penney but had to leave on her second day. AR 575. In January 2016, she began working part time at Cato Fashions, a women's clothing store, as an assistant manager. AR 195. She continued to work at Cato Fashions through March 2017, when she obtained employment at CVS as a pharmacy technician. AR 205.

2

The Social Security Administration denied Mikarovski's application for DI benefits initially in September 2015 and on reconsideration in November 2015. AR 76-110. In connection with those reviews, state agency medical consultants Tracey Larrison, DO, and Jan Hunter, DO, evaluated Mikarovski's physical limitations, and state agency psychological consultants Aidaluz Tirado, PsyD, and Myrna Tashner, EdD, evaluated Mikarovski's mental limitations. AR 84-89, 102-107.

Mikarovski requested review before an ALJ, who held a video hearing on August 17, 2017, at which Mikarovski and a VE testified. AR 36-37. On November 13, 2017, the ALJ issued a written decision following the familiar five-step process outlined in the regulations[3] to determine Mikarovski was not disabled from March 28, 2015, through the date of the decision. AR 14-25. The ALJ found that Mikarovski's work during the relevant time period did not rise to the level of substantial gainful activity. AR 16. The ALJ found that Mikarovski suffered from degenerative disc disease of the lumbar spine, obesity, anxiety, and depression, among other things. AR 16. Despite these impairments, the ALJ found that Mikarovski retained the residual functional capacity (RFC)[4] to perform light work with the following additional restrictions:

> She can lift and carry twenty pounds occasionally, ten pounds frequently. She can stand and/or walk for four hours in an eight-hour workday and sit six hours in an eight-hour workday with normal breaks. She can push and pull as much as she can lift and carry. She can occasionally perform overhead work bilaterally. She must never climb ladders, ropes, or scaffolds

---

[3] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." ***King v. Astrue***, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 404.1520(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005) (quoting ***Eichelberger v. Barnhart***, 390 F.3d 584, 591 (8th Cir. 2004)).

[4] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." ***Lewis v. Barnhart***, 353 F.3d 642, 646 (8th Cir. 2003) (quoting ***Bradshaw v. Heckler***, 810 F.2d 786, 790 (8th Cir. 1987)).

and can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl and have occasional exposure to extreme cold, extreme heat, fumes, odors, dust, gases, and environments with poor ventilation. She must avoid hazards such as unprotected heights and dangerous machinery. She can perform simple, routine tasks and have occasional contact with supervisors, coworkers, and the public.

AR 19. Based on his determination of Mikarovski's RFC and the testimony of the VE, the ALJ found that Mikarovski could not perform her past work as a surgical technician but that other work existed in significant numbers in the national economy that Mikarovski could perform, such as an office helper, pricer, and routing clerk. AR 23-25.

Mikarovski appealed. The Appeals Council denied Mikarovski's request for review on June 28, 2018, (AR 5-7) making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. § 404.981**. Mikarovski filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Docs. 1, 3). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 18, 21, 22), and the Honorable Leonard T. Strand, Chief United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

4

Mikarovski argues that the ALJ's finding she could perform other work is not supported by substantial evidence because the ALJ failed to resolve an inconsistency between the VE's testimony and the DOT. Mikarovski also argues that the ALJ's failure to consider statements submitted by her managers at Cato Fashions and CVS resulted in an erroneous RFC determination. Finally, Mikarovski argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution.

### A. *Inconsistency with the DOT*

Once the ALJ determines that the claimant cannot perform her past work, the ALJ evaluates at step five whether the claimant can perform other work that "exist[s] in significant numbers in the national economy (either in the region where [the claimant] lives or in several regions in the country)." **20 C.F.R. § 404.1560(c)(1)**. The Commissioner bears the burden of proving that jobs exist in significant numbers that someone with the claimant's age, education, work experience, and RFC can perform. *See* **Gieseke v. Colvin**, 770 F.3d. 1186, 1189 (8th Cir. 2014); **20 C.F.R. § 404.1560(c)(2)**. The Commissioner may meet this burden through testimony by a VE, but "VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet [its] burden" if the inconsistency is unexplained by the VE. **Moore v. Colvin**, 769 F.3d 987, 990 (8th Cir. 2014).

> Under Social Security Ruling (SSR) 00-4p, the ALJ must "ask about any possible conflict" between VE evidence and "information provided in the DOT." . . . If there is an "apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information."

*Id.* at 989-90 (alterations in original) (quoting **SSR 00-4p**, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000)).

In *Moore*, the Eighth Circuit held that the ALJ "improperly relied on the testimony of the VE without resolving [an] apparent conflict" between the VE's testimony and the

5

DOT. *Id.* at 990. In that case, the ALJ found the claimant "could only 'occasionally perform overhead reaching bilaterally.'" *Id.* The VE testified that there were two types of jobs the claimant could perform "with that limitation: 'janitorial work' and 'work in a restaurant as a cafeteria attendant clearing tables.'" *Id.* at 989. According to the DOT, however, the positions identified by the VE required frequent reaching (without "specif[ying] the direction of reaching").[5] *Id.* The Eighth Circuit held that an apparent conflict existed between the VE's testimony and the DOT, specifically noting "that the modifier 'clearing tables,' without more, was not sufficient to satisfy the question of whether or not the job of a cafeteria attendant requires more than occasional overhead reaching." *Id.* The court directed the district court to remand the case to the Social Security Administration based on the ALJ's failure to resolve the apparent conflict. *Id.* at 990; *see also* **Kemp ex rel. Kemp v. Colvin**, 743 F.3d 630, 633 (8th Cir. 2014) (remanding when ALJ failed to recognize and resolve "the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally, and DOT job listing # 737.687-026 indicating that a check-weigher job involved constant reaching").

Mikarovski argues that *Moore* and *Kemp* dictate remand here. In his hypothetical to the VE and in his RFC determination, the ALJ limited Mikarovski to "occasional overhead work bilaterally." AR 19, 68. The VE testified (and the ALJ found) that a person with this limitation could work as an officer helper (DOT § 239.567-010), routing clerk (DOT § 222.687-022), or pricer (DOT § 229.587-018), all of which require more than occasional reaching according to the DOT (the officer helper and routing clerk positions require frequent reaching, and the pricer position requires constant reaching). AR 24, 69-

---

[5] Occasionally is a term of art meaning "very little up to one-third" (or two hours) of an eight-hour workday. *See, e.g.*, **SSR 96-9p**, 61 Fed. Reg. at 34480. Frequently means one-third to two-thirds (or six hours) of an eight-hour day. *See, e.g.*, **SSR 83-10**, 1983–1991 Soc. Sec. Rep. 24, at 29-30 (CCH Jan. 1, 1983).

6

70.[6] Mikarovski argues the limitation to "occasional overhead work bilaterally" possibly conflicts with the DOT requirement of frequent reaching, and the ALJ erred by relying on the VE testimony without obtaining an explanation of this conflict.

The Commissioner argues that "occasional overhead work bilaterally" (the limitation in claimant's RFC here) is distinguishable from "occasional overhead reaching" (the limitation in *Moore* and *Kemp*). The Commissioner argues that a limitation to occasional overhead work does not mean that a claimant is limited to occasional overhead reaching.

I disagree. "Overhead work" does not appear to be defined by the Social Security Administration or the DOT. But it defies common sense to say that Mikarovski could perform overhead work only occasionally, but that she could constantly perform work requiring overhead reaching—as the Commissioner argues. Work that requires overhead reaching necessarily seems to involve working overhead. A limitation to only occasional overhead work seems to encompass limitations to both overhead reaching and overhead lifting (as well as any other functional requirements involving working overhead).

District courts in the Eighth Circuit to address this issue have agreed. *See Humphrey v. Berryhill*, No. 4:18 CV 190 ACL, 2019 WL 1359286, at *6-7 (E.D. Mo. Mar. 26, 2019) (holding that a limitation to no "work[] above shoulder level bilaterally" was inconsistent with DOT description of jobs requiring frequent or constant reaching, reasoning that "overhead 'work' necessarily involves reaching overhead"); *Houchins v. Berryhill*, No. 1:16 CV24 ACL, 2017 WL 1132344, at *6 (E.D. Mo. Mar. 27, 2017) (holding that "a restriction to only occasional overhead work bilaterally" created an apparent conflict with the DOT description of jobs requiring frequent or constant reaching); *Miller v. Colvin*, No. CV 14-3116, 2015 WL 7012850, at *2-3 (W.D. Ark. Nov. 12, 2015) (holding that a restriction to no overhead work created an apparent conflict with the DOT

---

[6] The VE also identified three sedentary positions in response to the ALJ's hypothetical—weight tester (DOT § 539.484-010), addresser (DOT § 209.587-018), and document preparer (DOT § 249.587-018)—that also require frequent reaching according to the DOT.

7

description of jobs requiring frequent reaching); *Soltis v. Colvin*, No. 14-cv-574 (LIB), 2015 WL 58793, at *6 (D. Minn. Jan. 5, 2015) (noting "the apparent conflict between the DOT descriptions and the VE's testimony arose because each of the jobs the VE identified requires either 'frequent' or 'constant' reaching," but plaintiff "cannot do overhead work, which would presumably involve reaching overhead"; ultimately holding the ALJ recognized and resolved the conflict).[7] The Commissioner argues that these cases are distinguishable because the claimants suffered impairments involving their upper backs or shoulders, unlike Mikarovski, whose pain is in her low back. *See **Humphrey***, 2019 WL 1359286, at *1 (severe impairments included obesity, right upper extremity osteoarthritis, and degenerative disc disease of the cervical spine); ***Houchins***, 2017 WL 1132344, at *1 (severe impairments included obesity, degenerative disc disease of the cervical spine with status post-discectomy and fusion at C5-C6 and degenerative disc disease and spondylosis of the lumbarsacral spine); ***Miller***, 2015 WL 7012850, at *1 (claimant suffered degenerative disc disease causing neck issues); ***Soltis***, 2015 WL 58793, at *2, *6 (court noted ALJ imposed overhead limitation because of claimant's shoulder problems). But the courts' reasoning did not depend on the impairments at issue. Mikarovski's low back pain makes extension painful for her and limits her back extension range of motion (AR 383, 394, 487, 609, 619, 621, 675, 678), and nothing about the nature of her impairments as reflected in the treatment records suggests that she would have difficulty with performing work overhead but not with overhead reaching.

The Commissioner argues that the ALJ meant only to limit Mikarovski's ability to lift overhead, citing Dr. Kuhnlein's opinion. Dr. Kuhnlein opined that "Mikarovski could

---

[7] *See also **Carroll v. Comm'r, Soc. Sec. Admin.***, No. CV SAG-16-1283, 2017 WL 1532547, at *2 (D. Md. Apr. 27, 2017) (holding that RFC limitation to no overhead work apparently conflicted with DOT requirement of frequent reaching); ***Allen v. Colvin***, No. 13-1122-JAR, 2014 WL 1309077, at *4 (D. Kan. Mar. 31, 2014) (noting that the DOT requirement of frequent reaching "appears inconsistent with the limitation articulated by the ALJ to the VE: a claimant who could not engage in overhead work . . . bilaterally with the upper extremities").

8

lift 30 pounds from floor to shoulder height, and 10 pounds occasionally over shoulder height," and that "[s]he could work occasionally at or above shoulder height because of the 'moment arm' phenomenon in the lumbar spine with such activities." AR 384. The Commissioner notes the ALJ assigned partial weight to Dr. Kuhnlein's opinion and seemingly accepted his opinion regarding Mikarovski's physical restrictions. AR 22. The Commissioner argues that Dr. Kuhnlein did not assign any reaching restrictions to Mikarovski. Although true that Dr. Kuhnlein's opinion does not mention reaching, he limited Mikarovski's ability to work overhead, and it is not clear that he meant to include only lifting restrictions with this limitation. In any event, if the ALJ meant to limit only Mikarovski's ability to lift overhead, as the Commissioner argues, the ALJ could have specifically said so in his RFC determination, rather than limiting Mikarovski's ability to work overhead generally.

The Commissioner also argues that the state agency medical consultants' RFC opinions support that the ALJ did not intend to impose any reaching restriction. Although true that the state agency medical consultants found Mikarovski suffered no manipulative limitations, they did not limit Mikarovski's ability to work overhead in any manner. AR 84-86, 102-104. Consideration of the medical opinions does not change my interpretation of the ALJ's limitation involving overhead work.

I recognize that a few district courts outside the Eighth Circuit have held that a limitation involving overhead work does not necessarily mean that the claimant is limited in overhead reaching. *See **Dupsloff v. Berryhill***, No. 5:17-cv-01274-GJS, 2018 WL 5880754, at \*3 (C.D. Cal. Nov. 8, 2018) (holding that "[a] limitation to no 'overhead reaching' is distinguishable from a limitation to no 'work above shoulder level'" and that therefore no unresolved conflict existed between the DOT and the VE's testimony); ***Cruz v. Colvin***, No. SACV 12-1143-JPR, 2013 WL 4082714, at \*3-4 (C.D. Cal. Aug. 13, 2013) (distinguishing RFC limitation to "overhead work" or "overhead lifting" from "overhead reaching" and rejecting claimant's argument "that the reaching requirements [identified by

9

the DOT] conflict with the ALJ's finding that she was 'precluded from performing overhead work'"). In *Cruz*, the court reasoned:

> [T]he ALJ did not preclude Plaintiff from performing "overhead reaching"—instead, he precluded her from performing "overhead *lifting*" and "overhead *work*." Viewed in the context of the evidence as a whole, the ALJ most reasonably intended to preclude Plaintiff from doing jobs that regularly required lifting items or performing maneuvers above her head, not from ever reaching in an upward direction. Had the ALJ intended to say that Plaintiff could perform no overhead "reaching," he likely would have simply inserted that limitation into the list of prohibited activities. Indeed, the undersigned has read dozens of Social Security decisions, and ALJs regularly prescribe limitations on various kinds on [sic] "reaching" or "overhead reaching." "Overhead work" can reasonably be interpreted to mean jobs performed almost constantly overhead, such as a window washer, tree trimmer, or wall washer. *See, e.g.,* DOT 389.687-014, 1991 WL 673282 (window-washer job requires "[c]lean[ing] windows, glass partitions, mirrors, and other glass surfaces of building interior or exterior," "set[ting] and climb[ing] ladder to reach second or third story," and "stand[ing] to reach first floor or inside windows"); DOT 408.664-010, 1991 WL 673358 (tree-trimmer job requires "[c]limb[ing] trees to reach branches interfering with wires and transmission towers"; "[p]run[ing] treetops, using saws or pruning shears"; and "[r]emov[ing] broken limbs from wires, using hooked extension pole"); DOT 381.687-026, 1991 WL 673260 (wall-cleaner job requires "[c]lean[ing] walls and ceilings by hand").

2013 WL 4082714, at *4 (all but first two alterations in original) (footnote and citations omitted). The problem with the court's analysis is that the jobs it cites as examples of those involving overhead work all appear to require overhead reaching. And the DOT descriptions of the window washer, tree-trimmer, and wall-cleaner jobs all state they require frequent reaching. I am unconvinced that jobs exist that involve overhead reaching but do not require working overhead.

On this record, I find that the limitation to only occasional overhead work creates a possible conflict with the DOT description of jobs identified by the VE as requiring frequent reaching. I recommend that the district court remand to the Social Security Administration for the ALJ to recognize and resolve this apparent conflict through testimony from a VE.

10

### B. Failure to Analyze or Cite the Statements from Mikarovski's Employers

Mikarovski's supervisors at the hospital, Cato Fashions, and CVS pharmacy completed assessment forms evaluating Mikarovski's work performance. *See* AR 205-08, 300-01. The ALJ did not discuss or cite these assessments in determining Mikarovski's RFC. *See* AR 19-23. Mikarovski argues that the ALJ's failure to do so resulted in the ALJ failing to assign her subjective complaints their due weight, which she argues were generally corroborated by her employers' assessment forms. *See* Doc. 18 at 5-7.

When evaluating the credibility of a claimant's subjective complaints—including pain or nervousness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." **Black v. Apfel**, 143 F.3d 383, 386 (8th Cir. 1998); *accord* **Polaski**, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*,[8] 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." **Black**, 143 F.3d at 386. The ALJ may not discredit the claimant's allegations based solely on the absence of objective medical evidence, but the ALJ may rest his credibility finding on "objective medical evidence to the contrary," **Ramirez v. Barnhart**, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," **Brockman v. Sullivan**, 987 F.2d 1344, 1346 (8th Cir. 1993). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives

---

[8] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. **Jones v. Callahan**, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

a good reason for doing so.'" ***Schultz v. Astrue***, 479 F.3d 979, 983 (8th Cir. 2007) (quoting ***Hogan v. Apfel***, 239 F.3d 958, 962 (8th Cir. 2001)).

The regulations provide that the ALJ must consider opinions regarding a claimant's functional limitations from nonmedical sources and "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." **20 C.F.R. § 404.1527(f)**. The Commissioner argues that the work assessment forms from Mikarovski's employers do not address her functional limitations and that thus, § 404.1527(f) has no applicability.

The work assessment form from the hospital rates Mikarovski's functional abilities in several categories on a five-point scale:

- Excellent: none
- Good:
    - Work quality
    - Work quantity/pace
    - Understand and carry out simple instructions and procedures
    - Understand and carry out complex/detailed instructions and procedures
    - Adapt to changes in the workplace
- Adequate:
    - Concentrate and remain on task
    - Follow rules
    - Adhere to schedules (including attendance)
    - Use good judgment (e.g., safety awareness, decision making)
    - General appearance
    - Relate to supervisors
    - Relate to coworkers
    - Relate to the public
- Poor:
    - Manage workplace stress
    - Manage personal stress while in the workplace
- Very poor: none

AR 300. The hospital also noted that while working light duty, Mikarovski complained to coworkers about her pain and the way the hospital treated her and overall, lacked a positive attitude. *Id.* The hospital noted Mikarovski left her work station often while working light duty. AR 301. The hospital noted it gave Mikarovski special considerations, including work in areas that significantly reduced standing, bending, and walking; and allowing for frequent absences (but not additional breaks, extra help or supervision, or shorter hours). *Id.*

Mikarovski's manager at Cato Fashions also completed a form evaluating Mikarovski's functional abilities on the job. AR 207-08. She noted that Mikarovski was not able to complete her job duties without special assistance and did not complete her work in the same amount of time as other employees in the same position, rating Mikarovski's productivity as 60% of similar employees. *Id.* She noted that Mikarovski received special assistance in several ways, including receiving fewer or easier duties, working irregular and less hours, taking more breaks or rest periods, having lower production standards, and receiving extra help (but not supervision). AR 207. She did not check that Mikarovski was allowed frequent absences but noted Mikarovski was frequently absent from work. AR 207-08. Mikarovski's manager at Cato Fashions concluded that Mikarovski came to work as scheduled but was often in pain, which made it difficult for her to stand and move as needed. AR 208. She noted that they tried to shorten Mikarovski's scheduled days to allow for her work time to be more comfortable and for her to be productive. *Id.*

Mikarovski's manager at CVS similarly noted that Mikarovski did not complete her job duties without special assistance, did not complete her work in the same amount of time as other employees in the same position (rating Mikarovski as 70% as productive as similar employees), and was frequently absent from work. AR 205-06. He noted that Mikarovski received special assistance in the form of fewer or easier duties, less hours, more breaks or rest periods, and extra help or supervision. AR 205.

13

The forms from Mikarovski's employers reflect on Mikarovski's functional abilities. The Commissioner argues that the statements "do not address plaintiff's functional abilities" (Doc. 21 at 9-10), but I disagree. That the statements from Cato Fashions and CVS were gathered for a different purpose—to determine Mikarovski's income, as the Commissioner argues—does not change that fact.

Mikarovski relies on *Nowling v. Colvin*, 813 F.3d 1110 (8th Cir. 2016), and *Vantuyl v. Colvin*, 985 F. Supp. 2d 880 (N.D. Iowa 2013). In *Nowling*, the claimant's sister-in-law testified at the administrative hearing about her "interactions with [the claimant]," who she saw almost daily, "and her observations of [the claimant's] seizures." 813 F.3d at 1117. She testified to the frequency of the claimant's seizures and their average duration, as well as about the claimant's activities of daily living. *Id.* at 1117-18. The ALJ "failed to address [the sister-in-law's] testimony expressly or describe what weight, if any, the ALJ accorded her testimony." *Id.* at 1121. The Eighth Circuit recognized that generally, "such an omission need not lead . . . to revers[al] [of] an ALJ's otherwise-supported decision." *Id.* But the court noted that "[w]hen coupled with other 'errors and uncertainties in the opinion,' . . . [the court] ha[s] remanded for reconsideration and clarification by the agency." *Id.* (citations omitted) (quoting **Willcockson v. Astrue**, 540 F.3d 878, 880 (8th Cir. 2008)). The court held that reversal was required because the ALJ misstated the record by finding the claimant shopped by herself, which "enjoy[ed] no support in the record" and was contradicted by the claimant's and her sister-in-law's testimony; it was "unclear what exactly the ALJ found not credible about [the claimant], other than the conclusion that her symptoms were some unarticulated degree of severity less than she described them to be"; and the ALJ's opinion ignored the "general nature of somatoform disorders." *Id.* at 1121-22 & n.7. Thus, the court held that the failure to address the sister-in-law's testimony could not be characterized as harmless or "merely as an 'arguable deficiency in opinion-writing technique.'" *Id.* at 1122 (quoting **Robinson v. Sullivan**, 956 F.2d at 841).

In *Vantuyl*, the other case Mikarovski relies upon, the ALJ "did not address the work performance assessment completed by [the claimant's] employer." 985 F. Supp. 2d at 893.

14

The claimant's employer had completed a form indicating that the claimant's "work quantity/pace," "ability to carry out complex/detailed instructions and procedures," "ability to understand and carry out simple instructions, manage workplace stress[,] and manage personal stress while in the workplace" were poor, but other work-related functions were adequate or good. *Id.* at 893-94. The court found that "the ALJ's credibility determination [wa]s supported by substantial evidence, even when considering this assessment," and that the ALJ did not err by failing to discuss it. *Id.* at 894. The court noted that the work performance assessment "provide[d] some support for [the claimant's] limitations, but [did] not establish that his impairments [we]re as disabling as" the claimant alleged. *Id.* The court noted that "most of the limitations identified by the supervisor were incorporated into the ALJ's RFC finding. *Id.*

This case is closer to *Nowling* than to *Vantuyl*. Here, the ALJ discredited the claimant's statements about her pain and limitations based in part on a finding of inconsistency with "her treatment records . . . show[ing] that the claimant's impairments are generally correctable with only conservative measures." AR 20. The ALJ cited treatment records from December 2014 through October 2015 in which providers determined surgery would not be beneficial for Mikarovski and objective examinations revealed normal neurological findings, including normal reflexes, normal coordination, and (mostly) normal strength; no spinal tenderness (at one appointment; the ALJ did not acknowledge that two other treatment records he cited reflected tenderness in Mikarovski's back); a negative straight leg raise test bilaterally (at one appointment; the ALJ did not acknowledge that another treatment record he cited reflected a positive straight leg test on the right side); and a normal range of motion in the lumbar spine at one appointment, but a limited range of motion in the back at two appointments (only one of the examinations reflecting a decreased range of motion was mentioned by the ALJ). *See* AR 20-21, 367, 449, 490, 545, 601.

Substantial evidence does not support the ALJ's conclusion that Mikarovski's symptoms were "correctable," nor that the "conservative" treatment she received was

15

inconsistent with her complaints of pain. Although Mikarovski's providers ultimately determined that surgery would not improve Mikarovski's symptoms, Mikarovski tried just about every other type of treatment to help alleviate her pain, including:

- Physical therapy (land and aquatherapy) (seventeen sessions in December 2014 and January 2015; and ten sessions in August and September 2016 (Mikarovski quit the second go-around before completion)) (AR 413-44, 674-92);
- Multiple injections, including five epidural steroid injections (both lumbar and caudal), two medial branch blocks, at least one facet injection, and two sacroiliac joint injections (AR 380-81, 393-94, 401, 412, 454, 486, 541, 546, 552, 554, 609, 621);
- At least six sessions with a chiropractor (AR 410, 489, 516, 526, 541);
- A transcutaneous electrical nerve stimulation (TENS) unit (AR 399, 486, 545);
- Ice and heating pads (AR 382, 399, 419, 452, 489);
- Massages (AR 419, 541);
- A massage chair (AR 381, 428); and
- Prescription and nonprescription medications, including Dilaudid (hydromorphone), Lortab (hydrocodone), tramadol, Toradol (ketorolac), Cymbalta (duloxetine), gabapentin, baclofen, Flexeril (cyclobenzaprine), Lodine (etodolac), Aleve (naproxen), and aspirin (a provider also prescribed Lyrica (pregabalin), but her insurance denied coverage) (AR 382, 406, 419, 444-45, 486, 511, 526, 537, 543, 546, 552, 615, 621, 765).

In addition, Mikarovski has undergone five magnetic resonance imagings (MRIs) of her back in an attempt to diagnose the cause of her pain (AR 365-67, 394, 473-77, 716), consulted with multiple specialists in pain management (at two different pain clinics) and four different neurosurgeons (AR 365, 398, 410, 486, 536, 541, 607-08), and visited the emergency room due to back pain on two occasions (AR 599, 765). Despite this treatment, Mikarovski has never reported improved pain lasting for a significant amount of time (injections generally offered only short-term relief), and she has complained of back pain fairly regularly (at appointments seeking treatment for her pain, as well as at her mental-health and other appointments). *See* AR 489, 494, 501, 532, 536, 541, 547, 573-87, 599, 607, 612, 615-16, 643, 674, 677-92, 766-69, 778; *but see* 604, 720, 751. Substantial evidence does not support the ALJ's conclusion that Mikarovski's back pain improved with treatment. Neither should the ALJ have relied so heavily on the fact that Mikarovski's

16

back impairment could not be corrected with surgery—this is not a case in which Mikarovski received little treatment; instead, as the ALJ recognized, her conservative treatment was extensive. AR 20-21, 23.

The ALJ gave other reasons for the weight assigned to Mikarovski's subjective complaints, pointing to the medical opinions in the record and a treatment record in which Mikarovski complained about having to be "on her feet for 8 hours at a time" for her job at CVS. AR 20-23, 587. But the work assessment form from Mikarovski's supervisor at CVS notes that Mikarovski was frequently absent from work, calling into question the ALJ's reliance on her ability to be on her feet for eight hours at a time, day in and day out, based on her work at CVS. AR 205-06. Although it appears Mikarovski could push through the pain some days, engaging in this level of activity caused her pain and to miss work on a regular basis.

Here, as in *Nowling*, the ALJ's failure to address the work assessment forms completed by Mikarovski's employers, coupled with other "errors and uncertainties" in the evaluation of Mikarovski's subjective complaints, leads to a conclusion that the ALJ erred by failing to address the work assessment forms and that this error was not harmless. Accordingly, I recommend that the district judge remand this case to the Social Security Administration for the ALJ to re-evaluate Mikarovski's RFC and subjective complaints in light of the work assessment forms completed by her employers and other deficiencies highlighted in this section.

### C. Appointments Clause Challenge

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia*, 138 S. Ct. at 2051.

17

The Supreme Court held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) were inferior officers subject to the Appointments Clause. *Id.* Mikarovski argues that following the reasoning in *Lucia*, Social Security ALJs are inferior officers subject to the Appointments Clause, and that her case should be remanded for a new hearing before a constitutionally appointed ALJ. Mikarovski did not raise this issue at any point during the administrative proceedings. Thus, the Commissioner argues that Mikarovski has forfeited her Appointments Clause challenge.

Every judge in the Northern District of Iowa has addressed this issue and held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration (and have declined to excuse the forfeiture). *See* **Rollie v. Saul**, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019) (Williams, J.); **Murphy v. Berryhill**, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.); **Stearns v. Berryhill**, No. C17-2031-LTS, 2018 WL 4380984, at *4-6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); **Davis v. Comm'r of Soc. Sec.**, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.), *appeal filed*, No. 18-3422 (8th Cir. Nov. 9, 2018). Indeed, although the Eighth Circuit has not yet addressed this issue (appeals are pending), every district court in the Eighth Circuit has ruled uniformly in the Commissioner's favor and denied Appointments Clause challenges raised for the first time on judicial review as forfeited. *See* **Turner v. Saul**, No. 4:18-CV-607-RLW, 2019 WL 4246841, at *4 (E.D. Mo. Sept. 6, 2019); **Cooper v. Saul**, No. 8:18-CV-409, 2019 WL 4059758, at *12 (D. Neb. Aug. 28, 2019); **Dixon v. Berryhill**, No. 8:18CV343, 2019 WL 3253950, at *8 (D. Neb. July 19, 2019); **Long M. v. Berryhill**, No. 18-CV-862 (ECW), 2019 WL 2163384, at *8 (D. Minn. May 17, 2019); **Hernandez v. Berryhill**, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); **Kimberly B. v. Berryhill**, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); **Audrey M.H. v. Berryhill**, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); **Catherine V. v. Berryhill**, No. CV 17-3257 (DWF/LIB), 2019 WL 568349,

18

at *2 (D. Minn. Feb. 12, 2019*)*; ***Bowman v. Berryhill***, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018).[9]

Almost all Mikarovski's arguments have been previously addressed (and rejected) by other courts. I adopt the reasoning of these decisions (and of the majority of courts to address the issue). I recommend the district judge reject Mikarovski's Appointments Clause challenge. I would not preclude Mikarovski from raising an Appointments Clause challenge on remand, however. *See, e.g.*, ***Mann v. Berryhill***, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018).

### III. CONCLUSION

I recommend that the district court **reverse** the decision of the Social Security Administration, enter judgment in favor of Mikarovski, and **remand** for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation,

---

[9] The vast majority of district courts (but not all) have held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration. *See, e.g.,* ***Morrow v. Berryhill***, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); ***Kline v. Berryhill***, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); ***Hutchins v. Berryhill***, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); ***Diane S.P. v. Berryhill***, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); ***Valasquez ex rel. Valasquez v. Berryhill***, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); ***Flack v. Comm'r of Soc. Sec.***, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019).

19

as well as the right to appeal from the findings of fact contained therein.  *See **United States v. Wise***, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 30th day of December, 2019.

*[signature: Kelly K.E. Mahoney]*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa